**Jacqueline A. KING, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civ.A. No. 03–G–1008–NW.**

United States District Court, N.D. Alabama, Northwestern Division.

July 6, 2004.

Douglas A. Wright, Douglas A. Wright PC, Florence, AL, for plaintiff.

Alice H. Martin, U.S. Attorney, Edward Q. Ragland, U.S. Attorney's Office, Birmingham, AL, Haila Naomi Kleinman, Social Security Administration–Office of General Counsel, Atlanta, GA, for defendant.

### *MEMORANDUM OPINION*

GUIN, District Judge.

The plaintiff, Jacqueline A. King, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Supplemental Security Income Benefits (SSI).[1]

Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).[2]

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

### STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitle-

---

1. In general the legal standards to be applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB), to establish a "Period of Disability," or to recover Supplemental Security Income (SSI). However, different statutes and regulations apply to each type of claim. Many times parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2. 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

ment to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)–(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

 In the instant case, the ALJ, J. Edward Tease, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote,* at 1559. Furthermore, when a claimant is not able to perform the full range of work at a partic-

ular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote,* at 1558–59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. *Foote,* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony". *Foote,* at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

 In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991)). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

■ When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### DISCUSSION

■ The plaintiff alleges she is disabled due to pain. Her objectively documented medical conditions without question satisfy the Eleventh Circuit's pain standard. The court has rarely if ever encountered a more one-sided medical record establishing the presence of severe spinal disease based upon radiological imaging. The ALJ, J. Edward Tease, cited this evidence in his opinion. Therefore, he can hardly claim to have overlooked it. In his decision ALJ Tease noted the following radiological results:

♦ [R]adiographs of the claimant's cervical spine demonstrated degenerative disc disease with disc protrusion at C4–C5, C5–C6 and C6–C7 in addition to some areas of spinal cord impingement. [R 16]

♦ [X]-rays, a cervical myelogram and a computed tomography scan revealed disc space narrowing at C4–5 and C6–7, posterior osteophytes[3] extending into the neural canal at C4–5, C5–6 and C6–7, a large old herniated nucleus pulposus[4] at C4–5 and C5–6 with a small moderate C6–7 disc bulge and lipping osteophytes at C3–4. The aforementioned tests showed neither evidence of prevertebral soft tissue swelling or fracture nor indication of osteophyte encroachment. [R 16]

♦ [An MRI] scan and computed tomography meylogram [sic.] of the claimant's cervical spine demonstrated multiple level cervical spondylitic[5] change with a large calcified herniated nucleus pulposus at C5–C6 with

---

3. Osteophytes are abnormal boney outgrowths. *Dorland's Illustrated Medical Dictionary* 1200 (27th Edition).

4. Herniation of nucleus pulposus—rupture or prolapse of the nucleus pulposus into the spinal canal. *Dorland's Illustrated Medical Dictionary* 758 (27th Edition).

5. Spondylitic is defined as "pertaining to or characterized by spondylitis." *Dorland's Illustrated Medical Dictionary* 1563 (28th Ed.1994). Spondylitis is the inflammation of the vertebrae. *Dorland's Illustrated Medical Dictionary* 1563 (28th Ed.1994).

significant cervical stenosis and some cord compression. Dr. Paramore, M.D. noted no cord signal change or neural foraminal[6] compromise at any level. [R 16]

♦ [An] (MRI) scan of her lumbar spine on July 17, 2001 ... showed early degenerative disc disease with mild broad-based L5–S1 annulus bulge[7] and a very small disc protrusion to the left of the T12 midline. [R 16]

The only reason given by ALJ Tease for refusing to credit the plaintiff's pain was as follows: "Diagnostic testing has shown only early signs of degenerative disc disease with mild effects and Dr. Paramore noted no cervical cord signal change or neural foraminal compromise at any level." [R 17] This is a remarkable statement in light of the extensive radiological evidence cited by ALJ Tease. In spite of this overwhelming objective evidence of severe cervical disc disease, ALJ Tease takes two isolated items and unfairly uses them to discredit the plaintiff's pain testimony. First, the MRI of the lumbar spine does show early degenerative disc disease of the lumbar spine. However it also shows a bulging disc at L5–S1 and a small disc protrusion at T12–L1. [R 180] More importantly, it is the plaintiff's neck and shoulder pain that she alleges is disabling, making her lumbar spine findings immaterial with respect to that pain. Second, Dr. Paramore's report when read as a whole supports the plaintiff's pain allegations. Dr. Paramore interpreted the radiologic imaging to show compression of the spinal cord. Dr. Paramore in no way suggests the plaintiff's pain is not real. He advised her that surgery would not be likely to relieve her pain. His concluding note shows the gravity of the plaintiff's spinal disorder: "I did emphasize to her the importance of surveillance follow-up given her degree of cervical canal stenosis to look for any signs of progressive myelopathy."[8] [R 320] There is no suggestion in

---

**6.** The neural, or intervertebral foramen is "the passage formed by the inferior and superior notches on the pedicles of adjacent vertebrae; it transmits a spinal nerve and vessels." *Dorland's Illustrated Medical Dictionary* 649 (28th Ed.1994).

**7.** The annulus is part of the intervertebral disc:

Intervertebral discs are composed of an annulus fibrosus and a nucleus pulposus. The annulus fibrosus is a strong radial tire-like structure made up of lamellae; concentric sheets of collagen fibers connected to the vertebral end plates. The sheets are orientated at various angles. The annulus fibrosus encloses the nucleus pulposus.

**Axial (Overhead) View of Intervertebral Disc**

http://www.spineuniverse.com/displayarticle.php/article1267.html

**8.** Myelopathy includes any of various functional disturbances or pathological changes in

Dr. Paramore's report that her condition could not cause disabling pain. Another of her treating physicians, Dr. Fraser, also advised her that surgery would not be guaranteed to relieve her pain. However, he did advise her of the seriousness of her condition: "Although I told her that her myelogram is sufficiently alarming & [m]any would recommend [surgery] be done to avoid cord compromise." [R 181]

 This record is remarkably devoid of contradictory medical evidence. The Commissioner's own consulting examiner, Dr. Evans, [R 189–91] found the plaintiff to be in pain. "She does have an increase in pain upon getting on and off the table and up and down out of the chair." "NECK: Showed spasm along the cervical spine." [9] "There was some crepitance on flexion and extension and rotation of the neck." "She seems to move her lower extremities very slowly because she states the pain increases on straight leg raises [10] in the lower back. The back did have spasm [11] along the lumbosacral spine. Range of motion again was very difficult due to her pain level." "LOCOMOTOR: She had to be helped on and off the table and up and down out of the chair." "Again seated leg raises were very painful." Dr. Evans also found decreased range of motion in the dorsolumbar spine and in the shoulders. It was noted that the plaintiff "moaned and grimaced throughout this exam." The Commissioner's own consulting examiner strongly supports the plaintiff's allegations of disabling pain.

 In short, there is no medical evidence in the record contradicting the presence of severe cervical disc disease. ALJ Tease simply refused to accept the plaintiff's allegations of pain without any medical evidence to support that decision. Perhaps he "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). However, it is more likely that he arbitrarily determined not to credit the plaintiff's testimony of disabling pain and then grasped at two isolated straws to support that decision. Normally, ALJs recite reasons for refusing to credit the claimant's pain testimony relating to their daily activities. In this case, ALJ Tease recites no such reasons. He simply recites the medical evidence that overwhelmingly demonstrates the presence of a condition that could cause disabling pain and then concludes, based upon two isolated and out of context items, that it shows the plaintiff is not credible. This does not even come close to the requirements under the law of this circuit:

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir.1987).

the spinal cord, often referring to nonspecific lesions in contrast to the inflammatory lesions of myelitis. *Dorland's Illustrated Medical Dictionary* 1090 (28th Ed.1994).

9. Spasm is objective evidence of pain itself and if sufficiently severe would constitute "objective medical evidence that confirms the severity of the alleged pain," thereby satisfy-

ing the first prong of the second part of the pain standard. *Foote,* at 1560.

10. A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (*See* Listing 1.00(B), ¶ 5)

11. *See* note 9, *supra.*

█ From the above it is clear that the ALJ's reasons recited for rejecting the plaintiff's pain testimony are not supported by substantial evidence. No reasonable or fair-minded decision maker would rely upon the two medical reasons cited by the ALJ to find the plaintiff not credible. ALJ Tease may have unstated reasons for not crediting the plaintiff's pain testimony. However, he is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in *Marbury v. Sullivan*, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988).... An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840–41 (11th Cir.1992). Therefore, since there is no substantial evidence to support the ALJ's refusal to credit the plaintiff's pain testimony, it must be accepted as true.

█ There can be no question that pain is present to such a degree as to preclude reliance on the Grids. Therefore, without expert vocational testimony, the ALJ's determination that the plaintiff can perform other work is not based upon substantial evidence, and the Commissioner failed to carry her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is dis-abled within the meaning of the Social Security Act. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. *Id.* An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed.